UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAMIAN KASSAB et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>DANIEL ARAF HOP et al.,<br>               Defendants. | Case No. 22-cv-12454<br>Honorable Shalina D. Kumar<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 14)**

Plaintiffs Damian Kassab ("Kassab") and Arturo Davila ("Davila") sued defendants Daniel Araf Hop ("Araf") and Armar Capital USA, LLC ("Armar"), alleging that Araf and Armar obtained control of plaintiffs' Mexico real estate through misrepresentations and false promises. ECF No. 1. Plaintiffs assert claims for breach of contract, fraudulent misrepresentation, unjust enrichment, civil conspiracy, breach of fiduciary duty, and promissory estoppel.

Defendants moved to dismiss, and the motion was fully briefed. ECF Nos. 14, 18, 22. On August 31, 2023, the Court granted the motion and dismissed the case. ECF No. 32. Plaintiffs appealed and the Sixth Circuit vacated this Court's prior decision and remanded in light of *Firexo Inc. v.*

*Firexo Group Ltd.* ECF No. 37; 99 F.4th 304 (6th Cir. 2024). The parties then filed supplemental briefs addressing defendants' motion. ECF Nos. 41, 42. For the reasons below, the Court **DENIES** defendants' motion.

## I. Factual Background

Kassab resides in Michigan and Davila resides in California. ECF No. 1, PageID.3, ¶¶ 5, 6. From 2005 to 2019, they owned two companies, Negra Bamboo, S.A. de C.V. and Tulum Maya, S.A. de C.V., that held undeveloped land (the "Properties") in Quintana Roo, Mexico, near Tulum and Cancun. *Id.* at PageID.4-5, ¶¶ 14, 16. Kassab owned a 99% interest in the two companies and Davila owned the remaining 1%. *Id.* at PageId.5, ¶ 15.

In June 2018, Kassab met with Araf, a businessman, to discuss Araf's interest in acquiring the Properties. *Id.* at PageId.5-6, ¶¶ 19, 21. Real estate developer Claudia Carvajal arranged the meeting, which took place in Detroit, Michigan. *Id.* at PageId.5, ¶¶ 17, 18. Kassab and Araf held discussions over two days and during these discussions, Araf allegedly represented that he had connections within the Mexican government that would enable him to obtain the permits needed to develop the Properties. *Id.* at PageId.6, ¶ 25

According to the complaint, Kassab and Araf continued with in-person and virtual discussions over the next month, culminating in a final meeting between Kassab, Araf, and Araf's father, an allegedly prominent businessman himself. *Id.* at PageId.6-7, ¶¶ 26, 28. At this final meeting, terms of an agreement were allegedly discussed that included Kassab transferring his interest in the Properties to Araf with Araf's father standing behind the arrangement. *Id.* at PageId.7, ¶ 28. On July 25, 2018, Kassab sent Araf an email, which he affirmed, memorializing the terms previously discussed. *Id.* at PageID.7-8, ¶ 29, 30. Plaintiffs further allege that, in the same email exchange, Araf represented that the Mexican government had already agreed on favorable terms for issuance of the permits needed to develop the Properties. *Id.* at PageID.8, ¶ 32.

In August 2018, Kassab and Araf allegedly modified their earlier agreement. *Id.* at PageID.10, ¶ 39. Around the same time, they signed documents that they say were instruments necessary to effectuate their contribution to the alleged partnership. *Id.* at PageID.10, ¶ 39. Plaintiffs allege that those documents were in Spanish, that no English translation was provided, and that they understood the documents only to authorize Araf to pursue permits, not to transfer ownership of the Properties or the companies that held them. *Id.* at PageID.9, ¶¶ 37, 38.

Plaintiffs allege that the Mexican government never approved any permits, that Araf never paid Kassab or Davila any money, that Araf rejected efforts to unwind the arrangement, and that he later mortgaged portions of the Properties to secure substantial debt. *Id.* at PageID.12-13, ¶¶ 49-58.

## II.  Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. *See* Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts that, taken as true, state a plausible claim for relief." *Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations" but must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. A court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (internal

citations and quotation marks omitted); *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024).

The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. "[P]lausibility occupies that wide space between possibility and probability." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (internal marks omitted). Plausibility is achieved when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, a court must "draw on its judicial experience and common sense." *See id*. at 679.

In addition, under *Firexo*, the applicability of a forum-selection clause in a diversity case is governed by state law through ordinary choice-of-law principles, not federal common law. 99 F.4th at 326-29. And where there is a factual dispute over which contractual writing governs or which forum-

selection clause applies, that dispute cannot be resolved on the pleadings under Rule 12(b)(6). *See VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 396 (6th Cir. 2025).

### III. Analysis

#### A. The present record does not permit the Court to treat the August 20 contracts as the definitive and integrated operative agreements.

Defendants' motion depends on the premise that the August 20, 2018 contracts are the sole source of the governing forum-selection clause and the parties' operative obligations. But the complaint alleges a more complicated history. It plausibly alleges an earlier July agreement, a July 25 memorialization by email, a later August modification, and then separate August documents that plaintiffs say were misrepresented as mere authority-conferring papers rather than the parties' true bargain. ECF No. 1, PageID.7-10, ¶¶ 28-39.

At the pleading stage, the Court must accept those allegations as true. The Court finds that those allegations create at least a threshold dispute over whether the August 20 contracts were the complete and integrated expression of the parties' transaction, or instead were only one set of writings within a broader course of dealing that included earlier and

later agreements or modifications. The Court cannot resolve that dispute on the pleadings.

Moreover, defendants do not merely invoke the August 20 contracts as relevant documents; they ask the Court to treat them as dispositive of the forum-selection issue, as well as the contract, partnership, and other related claims. *See* ECF No. 14. But where the pleadings plausibly allege competing writings or agreements governing the same transaction, the Court cannot select among them as a matter of law on a Rule 12(b)(6) motion. *VCST*, 142 F.4th at 401-03.

### B. The Court cannot rely on the English translations in the manner defendants propose on the present record.

There is also a threshold dispute concerning the English-language translations on which defendants rely. Plaintiffs allege that the August 20 documents were written in Spanish, that no English translation was provided to them at the time of execution, and that they did not understand the documents they signed. ECF No. 1, PageID.11, ¶¶ 44-46. Yet defendants ask the Court to treat the later-filed English translations as definitive proof of both the contracts' meaning and the breadth of the Mexico forum-selection clause.

Defendants' motion depends on the Court accepting the translated language as sufficiently reliable to determine, at the pleading stage, that

the August 20 contracts govern the entire dispute and require dismissal. But the present record does not adequately resolve whether the reliability and accuracy of the translations, and the competency of the translator is sufficient for those contracts to be treated as the complete operative agreements. Here, the "reliability [of the translations] is in dispute" and thus, before accepting the disputed translations, the Court must determine "the translation's accuracy" and inquire into whether "the person who made the translation is competent to make the translation and any potential bias." *3M Co. v. Premium Contractor Sol., LLC*, No. 3:20-CV-443, 2021 WL 3737908, at *3 (S.D. Ohio Aug. 24, 2021) (collecting cases).

The Court need not decide at this juncture whether defendants could cure this evidentiary issue on a fuller record. It is enough to conclude that, on the current record, the Court cannot use the translated August 20 contracts in the definitive manner defendants propose.

### C. These threshold disputes preclude dismissal under defendants' present theories.

These unresolved threshold issues defeat dismissal to the extent defendants' motion depends on the Court accepting the August 20 translated contracts as the definitive and integrated operative agreements. That includes defendants' request for dismissal based on the forum-selection clause. Before the Court can determine whether the clause

applies under Michigan law after *Firexo*, the Court must first determine which writing or writings govern the parties' dispute. The complaint does not permit that determination as a matter of law in defendants' favor.

For the same reason, dismissal under forum non conveniens is not warranted on the present record. Defendants' forum non conveniens argument likewise depends on the Court giving controlling weight to the Mexico forum-selection clause contained in the August 20 contracts. But because the Court cannot presently determine that those contracts govern in the manner defendants contend, defendants have not established a basis for dismissal under that doctrine at this stage.

The same is true, at least at present, of defendants' Rule 12(b)(6) arguments that no contract or partnership existed because the August 20 contracts foreclose those theories. Plaintiffs plausibly allege a June/July agreement, an August modification, and a later document-signing event procured through misrepresentations about the nature and effect of the documents. Those allegations are sufficient to preclude dismissal on the pleadings based on defendants' contrary characterization of the transaction.

The Court therefore declines to dismiss the complaint.

## IV. Conclusion

For the reasons above, defendants have not shown that dismissal is warranted at this stage and the Court **DENIES** defendants' motion to dismiss. ECF No. 14.

s/ Shalina D. Kumar
SHALINA D. KUMAR
Dated: April 22, 2026                    United States District Judge